**PURDUE et al. v. RALPH.**

No. 8874.

Circuit Court of Appeals, Fifth Circuit.

Dec. 22, 1938.

Rehearing Denied Jan. 16, 1939.

D. H. Culton, of Amarillo, Tex., and W. C. Hock, of Fort Worth, Tex., for appellants.

E. H. Foster and Perry S. Pearson, both of Amarillo, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is an action to recover the balance of the purchase price of a casinghead gasoline plant. The terms of sale provided that $5,000 should be paid in cash, $4,000 on February 16, 1930, and $4,000 on the sixteenth of each succeeding month until ten such payments had been made, plus a final payment of $3,000 one month later.

It was further agreed between the vendor and vendee that said deferred payments should be made only out of profits, and should bear interest at the rate of seven per cent per annum, and that, should the profits derived from the operation of the plant during the preceding month be insufficient to pay the regular installment, there should be no personal obligation on the part of the grantee, his successor, or assigns to make up the deficiency, and the same should be carried forward and retired from the operation of the plant, "the intention of all parties being that the entire sum of $43,000 additional to be paid shall be paid only from the profits derived from the operation of said casinghead plant, and not otherwise."

A number of questions were argued orally, and are presented in the briefs, one of which stands out as being determinative of the case. It is whether or not appellants, in ascertaining the profits derived from operating the plant, may deduct a reasonable depreciation on the equipment and material which were added when the plant was reconstructed. The reasonable amount of this item is stipulated, and, it is agreed, if credit for it was improperly taken, sufficient profits were earned to pay the balance due as purchase money.

Large sums were spent in the reconstruction of the plant after its purchase, and it is only on these additional expenditures that depreciation is claimed, the appellants conceding that no depreciation should be taken into account upon the original equipment and material, but they insist that it should be allowed on what was added to the plant when it was rebuilt. They overlook the fact that the old plant and the additional material were all built into one plant.

Appellants adopt an untenable position when they undertake to make a distinction between the allowable depreciation upon the equipment and material in one and the same plant. The answer to the distinction sought to be made is found in the contract itself, which provides that the deferred payments of the purchase price should be paid from the profits of operation of the "plant as reconstructed." This is indicative of an intention to make no distinction between the material and equipment going into the plant as reconstructed, dependent upon its source.

Our decision depends upon the intention of the parties at the time the contract was made. We think the words, "profits derived from the operation of said gasoline plant during the preceding calendar month," were not employed in a technical sense, but were intended to have their common and ordinary meaning. We have it from the highest authority that, according to common understanding, net receipts ordinarily represent the profits of a business. Eyster v. Centennial Board of Finance, 94 U.S. 500, 24 L.Ed. 188.

In Mayer v. Nethersole, 71 App.Div. 383, 75 N.Y.S. 987, the court held that the word, "profits," ordinarily means the excess of returns over expenditures. It said that depreciation may or may not be included in expenditures, according to circumstances.

Regardless of technical definition, the parties here contemplated that the plant would be paid for within a period of eleven months from the time its operation began, and, for the first few months, no depreciation was charged. This indicates that they did not intend for profits to be absorbed by entries for depreciation instead of being applied on the purchase price. Such a construction would permit the property to be worn out at the expense of the vendor. Our construction of the contract accords with that given to it by the parties; that is, that profits derived from operation were not intended to be subjected to a deduction for depreciation as an item of expense. Boothe v. Summit Coal Min. Co., 55 Wash. 167, 104 P. 207, 19 Ann.Cas. 1255; Union Theatre Co. v. Osran Amusement Co., 131 Wash. 82, 228 P. 1010.

The judgment of the district court is affirmed.